# In the United States Court of Federal Claims

No. 12-516 C
(Filed February 26, 2013)

```
* * * * * * * * * * * * * * *  *
EXTREME COATINGS, INC.         *
                               *   Contract Dispute;
            Plaintiff,         *   RCFC 12(b)(6);
                               *   Elements of a Differing Site
      v.                       *   Conditions Claim;
                               *   "Act of God" Weather
THE UNITED STATES,             *   Conditions.
                               *
            Defendant.         *
* * * * * * * * * * * * * * *  *
```

    *Michael H. Paine*, Philadelphia, PA, for plaintiff. *Lane F. Kelman*, Philadelphia, PA, of counsel.

    *Alex P. Hontos*, United States Department of Justice, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Steven J. Gillingham*, Assistant Director, Washington, DC, for defendant.

_____

**OPINION AND ORDER**
_____

**BUSH**, *Judge*.

    The court has before it defendant's motion for partial dismissal, brought under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). The motion challenges Counts I-V, and a portion of Count IX, of the complaint. Def.'s Mot. at 1. Plaintiff's suit is a not atypical contractor claim for monetary relief brought under the Contract Disputes Act of 1978, 41 U.S.C.A. §§ 7101–7109 (West 2011) (CDA). Compl. ¶ 3. Defendant's motion is not persuasive and must be denied.

# BACKGROUND[1]

Plaintiff Extreme Coatings, Inc. (ECI) was awarded a contract valued at $705,368.35 on June 3, 2009 to perform "partial recoating of the downstream side of the spillway radial gates at Yellowtail Dam [on Big Horn Lake], located approximately forty-five (45) miles southwest of Hardin, Montana." Compl. ¶¶ 4, 12, 151. The contracting agency was the United States Department of the Interior, Bureau of Reclamation (Bureau). The project was to proceed in two phases. Phase I was to take place within 120 days from the issuance of the Notice to Proceed, which, in this case, meant that ECI was to finish Phase I by October 10, 2009. *Id.* ¶¶ 14, 16-18. Phase II was to take place during a forty-five (45) day window which would be triggered by lower water levels (and this window would likely not occur until 2010). *Id.* ¶¶ 7-8, 15. Phase II of the project was eventually scheduled for April 14, 2010 through May 29, 2010. *Id.* ¶ 63.

According to plaintiff, neither Phase I nor Phase II was performed within the schedule set forth in the contract, and government-caused delays were costly to ECI. Compl. at 4-13. The complaint contains numerous allegations of fault attributed to the government, but a lengthy recitation of plaintiff's allegations is not needed here. On May 23, 2011, ECI filed a certified claim with the contracting

---

[1] / The court makes no findings of fact in this opinion. The facts recited here are taken from the complaint. Although defendant invites the court to consider an exhibit attached to its reply brief, the court declines to do so, for two reasons. *See* Def.'s Reply at 7 & n.2 (discussing an attached appendix of "relevant portions of [plaintiff's] contract"). First, when considering a motion filed under Rule 12(b)(6), the court typically limits its inquiry to the facts alleged in the complaint. *See Am. Contractors Indem. Co. v. United* States, 570 F.3d 1373, 1376 (Fed. Cir. 2009) ("On a motion to dismiss, the court generally may not consider materials outside the pleadings.") (citations omitted); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed. Cir. 1993) (stating that "on motion to dismiss on the complainant's pleading it is improper for the court to decide the case on facts not pleaded by the complainant, unless the complainant had notice thereof and the opportunity to proceed in accordance with the rules of summary judgment") (citations omitted). Second, defendant raised its argument regarding the "relevant portions" of plaintiff's contract only in its reply brief. This argument is thus not properly before the court. *See Arakaki v. United States*, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002); *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 467 (1999))). The court therefore shall rule on defendant's motion without further reference to the "relevant portions" of plaintiff's contract attached to defendant's reply brief.

officer requesting an equitable adjustment of the contract amount. *Id.* ¶ 97. This claim was apparently denied in large part, although an adjustment of $28,500 was provided through a unilateral modification to the contract. *Id.* ¶¶ 99-100.

On August 15, 2012, ECI filed its CDA claims in this court. The complaint is divided into Counts I-IX. The court adopts plaintiff's shorthand list which provides the nature and subject of the claim presented in each count:

>**Count I** – Type I Differing Site Conditions
>(Design & Configuration of the Vertical Side Seal Assembly)
>
>**Count II** – Type II Differing Site Conditions
>(Hardness or Rigidity of the Existing Rubber Seal Side Seals)
>
>**Count III** – Type II Differing Site Conditions
>(Excessive Rust on Side Seal Retainer Bar)
>
>**Count IV** – Type II Differing Site Conditions
>(Rust Encountered Under the Existing Layer of Paint During Sandblasting Operations)
>
>**Count V** – Type I Differing Site Conditions
>(Upper Pool Water Elevations)
>
>**Count VI** – Constructive Changes
>(Suspension of Work)
>
>**Count VII** – Constructive Changes
>(Reinstall Temporary Water Impediment Measures)
>
>**Count VIII** – Defective Designs and Specifications
>
>**Count IX** – Delays for which the Government is Responsible.

Pl.'s Opp. at 6-7 (formatting altered). The court reserves its discussion of defendant's challenges to Counts I-V, and to a portion of Count IX, for the analysis section of this opinion.

## DISCUSSION

I. **Standard of Review for a Motion Filed under RCFC 12(b)(6)**

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982). The court must inquire, however, whether the complaint meets the "plausibility" standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007) (*Twombly*). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*) (quoting *Twombly*, 550 U.S. at 570).

The United States Court of Appeals for the Federal Circuit has not specifically addressed the magnitude of the changes wrought by *Twombly* and *Iqbal*. There are, however, enough references by the Federal Circuit to the post-*Twombly* Rule 12(b)(6) standard to provide adequate guidance to this court in the circumstances of this case.[2] Here is a brief passage touching on the standard which should be applied here:

> We must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of

---

[2] Many decisions of the Federal Circuit interpret regional circuit precedent as to procedural matters, and these decisions do not necessarily state the Federal Circuit's position on procedural matters arising in this court. *See, e.g.*, *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003) (stating that "we apply the law of the regional circuit to the procedural question" in a patent dispute arising in a district court) (citation omitted).

> the plaintiff. To state a claim, the complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face.

*Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting and citing *Twombly*, 550 U.S. at 555-57, 570 and citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). Similar brief renditions of the standard may be found in a handful of precedential decisions of the Federal Circuit deciding appeals arising from this court. *See, e.g.*, *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013) (citing *Twombly*, 550 U.S. at 557; *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009); *Cary*, 552 F.3d at 1376; *Lindsay*, 295 F.3d at 1257); *Kam-Almaz v. United States*, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) (citing *Twombly*, 550 U.S. at 555, 557; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Acceptance Insurance*, 583 F.3d at 853); *Acceptance Insurance*, 583 F.3d at 853 (citing *Twombly*, 550 U.S. at 557; *Papasan*, 478 U.S. at 286; *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009)).

The Federal Circuit has also engaged in discussions of the post-*Twombly* standard in appeals from the United States Court of International Trade, in, for example, *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1354-55 (Fed. Cir. 2010) (extensively quoting *Twombly*, 550 U.S. at 555-56 and citing *Iqbal*, 556 U.S. at 677-80). The equal protection claim at issue in that case, however, is not at all similar to the contract claims at issue in this suit. Thus, the application of the standard in *Totes-Isotoner* may not be all that helpful in this case, because the post-*Twombly* standard has frequently been described as context-specific in its application. *See, e.g.*, *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citation omitted). In another Court of International Trade case, *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062-63 (Fed. Cir. 2012), the Federal Circuit applied *Twombly* and *Iqbal* to claims that the government "failed to take various actions required by law involving the assessment, collection, and distribution of antidumping duties," claims which also have little resemblance to

the contract claims at issue here. Thus, the application of the standard in *Sioux Honey*, too, provides little guidance in this case.

To further complicate precedent on this issue, the Supreme Court has issued a number of decisions that discuss and interpret *Twombly*, and lower courts have varied greatly in their interpretation of the post-*Twombly* Rule 12(b)(6) standard of review. *E.g.*, *Dobyns v. United States*, 91 Fed. Cl. 412, 422-28 (2010) (conducting a thorough analysis of the impact of *Twombly* and *Iqbal* on this court's standard of review for RCFC 12(b)(6) motions). Although *Dobyns* is not binding on this court, Judge Allegra's analysis is informative. Rather than attempt to repeat the extensive analysis in *Dobyns* here, the court instead quotes the concluding passage which rendered the holding in that case:

> [T]he court believes that this case, in the main, should proceed. Research reveals breach-of-contract complaints far less detailed than plaintiff's that have survived scrutiny under the dismissal standards outlined in *Twombly* and/or *Iqbal*. While it goes without saying (almost) that each case stands on the particulars of the complaint at issue, these cases, nevertheless, collectively belie the notion that a plaintiff must jump through considerably more hoops now, in pleading a breach of contract claim, than was the case previously. In this court's view, plaintiff's contract claims have "enough heft" to traverse the new "plausibility" standard, *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955, and enough factual detail to put defendant on notice as to the basic nature of the claims raised, so as to allow this case to proceed to discovery.

91 Fed. Cl. at 430 (footnoted omitted).

As the court interprets these cases, *Twombly* and *Iqbal* are properly read to establish a slightly more inhospitable review of the sufficiency of factual allegations presented in a complaint. *E.g.*, *Dobyns*, 91 Fed. Cl. at 427. Under *Twombly* and *Iqbal*, the court must not mistake legal conclusions presented in a complaint for factual allegations which are entitled to favorable inferences. *See, e.g.*, *Sioux Honey*, 672 F.3d at 1062 ("The Supreme Court explained in *Twombly*

that while Rule 8 does not require 'detailed factual allegations,' it does require more than 'labels and conclusions.'" (citing *Twombly*, 550 U.S. at 555)). Nonetheless, the requirement of facial plausibility should not be construed as a revolutionary redrafting of the notice pleading requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2); *see Dobyns*, 91 Fed. Cl. at 428 ("Thus, the Supreme Court did not, by requiring plausibility, transmogrify the 'short and plain' pleading requirement of Rule 8 into a pedantical one that requires the extensive pleading of specific facts or every variation or corollary of a claim."). Furthermore, the court must not attempt to try plaintiff's case on the basis of the allegations in the complaint. *See, e.g.*, *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 71 (2009) (cautioning against the government's attempt "to collapse discovery, summary judgment and trial into the pleading stages of a case" (citing *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555)).

The following passage from *Sioux Honey* appears to capture the essence of post-*Twombly* standard of review for motions brought under RCFC 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

672 F.3d at 1062-63 (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 556-58, 570) (internal quotations omitted). In the government contracts context, this standard requires a plaintiff to provide sufficient factual allegations in the complaint to support success on the type of contract claim alleged in the complaint. *See, e.g.*, *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1317 (Fed. Cir. 2011) (noting that for a claim alleging that a negative performance evaluation was

arbitrary and capricious, the contractor would "need to allege facts indicating that all of [its] substantial [performance] delays were excusable"). The court now turns to the application of this standard of review to defendant's motion.

## II.  Analysis

### A.  The Differing Site Conditions Claims in Count I-V of the Complaint

Defendant urges this court to dismiss plaintiff's Counts I-V, the differing site conditions claims, for failure to state a claim upon which relief may be granted.[3] As discussed above, the court must apply the post-*Twombly* standard of review to defendant's motion. Under this standard, defendant has not shown that ECI's factual allegations do not entitle plaintiff to a legal remedy on its differing site conditions claims. *See Lindsay*, 295 F.3d at 1257.

#### 1.  The Parties' Arguments as to the Standard of Review

Both parties cite to the correct standard of review discussed *supra*, with little substantive analysis of how the standard must be applied in the context of defendant's motion. *See* Def.'s Mot. at 4-6; Pl.'s Opp. at 8. Defendant provides two citations to RCFC 8(a). Def.'s Mot. at 4 ("Under RCFC 8(a), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" (quoting RCFC 8(a)(2)); *id.* at 6 (stating that "[ECI's] pleadings must allege facts that, if later proven, would entitle it to relief" (citing RCFC 8(a)(2)). These citations do little to advance the analysis required here.

Plaintiff points the court to *Gould* for its holding as to the sufficiency of pleadings in a complaint dismissed for failure to state a claim. Pl.'s Opp. at 8. Relying on a prior version of RCFC 8(a)(2), the Federal Circuit vacated this court's dismissal of a count of a contractor's complaint for failure to state a claim. *Gould*, 935 F.2d at 1276. The defect in the complaint, according to the trial court, was a failure to specifically allege that a contract specification was misleading. *Id.* at 1275. The Federal Circuit held, instead, that the complaint's allegation of

---

[3]/ Defendant does not address Counts VI-VIII in its motion, and these counts will not be discussed further in this opinion.

"'deficiencies in the performance specification,'" in support of a claim of superior knowledge withheld by the United States, was all that was needed at the motion to dismiss stage of the litigation. *Id.* at 1276. *Gould* continues to be cited as good law, *see, e.g.*, *Cary*, 552 F.3d at 1376, and the court agrees with plaintiff that there is no obvious defect in the factual allegations in the complaint, under either RCFC 8(a)(2) or *Gould*.

### 2. The "Temporal" Element of Differing Site Conditions Claims

The more substantive issue before the court is whether, under *Twombly* and *Iqbal*, plaintiff has provided factual allegations that support the facial plausibility of its differing site conditions claims. Defendant's RCFC 12(b)(6) challenge to the differing site conditions claims in Counts I-V rests upon the implied proposition that a differing site conditions claim is facially implausible unless the complaint specifies when each differing site condition was in existence. *See* Def.'s Mot. at 1 ("To state a viable claim for a differing site condition, a contractor must allege facts showing that the differing condition existed at the time of contract execution."). Defendant seeks to generalize the holdings in three cases discussing the point in time a differing site condition must have been in existence, so as to create a rigorous pleading standard for differing site conditions claims. Defendant's rigorous pleading standard is not supported by the cases upon which defendant relies, and, even if it were, Counts I-V, accorded all favorable inferences, would survive the test created by defendant.

### a. Elements of Type I and Type II Differing Site Conditions Claims

Defendant and plaintiff both rely on the same case, *Randa/Madison Joint Venture III v. Dahlberg*, 239 F.3d 1264 (Fed. Cir. 2001), to describe the requisite elements of differing site conditions claims. Def.'s Mot. at 5-6; Pl.'s Opp. at 9. *Randa/Madison* defines Type I differing site conditions as

> "subsurface or latent physical conditions at the site which differ materially from those indicated in this contract."

239 F.3d at 1269 (quoting 48 C.F.R. § 52.236-2 (2000)). The Federal Circuit also noted that to prevail on a Type I differing site conditions claim, "'the contractor

must prove, by a preponderance of the evidence, that the conditions indicated in the contract differ materially from those it encounters during performance.'" *Id.* at 1274 (citations omitted). A later case from the Federal Circuit defines four elements required to prevail on a Type I differing site conditions claim:

> First, the contractor must prove that a reasonable contractor reading the contract documents as a whole would interpret them as making a representation as to the site conditions. . . . Second, the contractor must prove that the actual site conditions were not reasonably foreseeable to the contractor, with the information available to the particular contractor outside the contract documents, *i.e.*, that the contractor "reasonably relied" on the representations. . . . Third, the contractor must prove that the particular contractor in fact relied on the contract representation. . . . Fourth, the contractor must prove that the conditions differed materially from those represented and that the contractor suffered damages as a result . . . .

*Int'l Tech. Corp. v. Winter*, 523 F.3d 1341, 1348-49 (Fed. Cir. 2008) (*International Technology*) (citations omitted).

*Randa/Madison* defines Type II differing site conditions as

> "unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract."

239 F.3d at 1276 (quoting 48 C.F.R. § 52.236-2 (2000)). The Federal Circuit noted further that there are three elements required to prevail on a Type II differing site conditions claim:

> "the unknown physical condition must be one that could not be reasonably anticipated by the contractor from his study of the contract documents, his inspection of the site, and his general experience[,] if any, as a contractor in the area."

*Id.* (quoting *Perini Corp. v. United States*, 381 F.2d 403, 410 (Ct. Cl. 1967)) (alteration in original). This court has sometimes adopted a different three-element test for a Type II differing site conditions claim. *See, e.g.*, *All Power, Inc. v. United States*, 60 Fed. Cl. 679, 685 (2004) ("A Type II differing site condition depends on the existence of three elements – (1) the condition must be unknown to the contractor; (2) unusual; and (3) materially different from comparable work." (citing *Kiewit Constr. Co. v. United States*, 56 Fed. Cl. 414, 417 n.8 (2003))); *Lathan Co. v. United States*, 20 Cl. Ct. 122, 128 (1990) ("A Type II claim requires plaintiff to show three elements. First, plaintiff must show that it did not know about the physical condition. Second, plaintiff must show that it could not have anticipated the condition from inspection or general experience. Third, plaintiff must show that the condition varied from the norm in similar contracting work." (citing *Perini*, 381 F.2d at 410; *S.T.G. Constr. Co. v. United States*, 157 Ct. Cl. 409, 415 (1962))). For the court's purposes here, the court adopts the three-element standard stated in *Randa/Madison*, but notes the utility of the other formulations employed by this court.

The court notes that none of these cases describing the elements of proof for Type I or Type II differing site conditions claims mentions the element of proof proposed by defendant in its motion, which would add a fifth required element, a "temporal" element, for Type I claims, and a fourth required element, the same "temporal" element, for Type II claims.

    b.  **Defendant's Reliance on a Trio of Holdings to Require that a Temporal Element Be Pled in All Differing Site Conditions Claims**

Defendant suggests that Counts I-V of the complaint fail to state a claim because plaintiff has neglected to specifically allege that the differing site conditions identified in the complaint were in existence at the time of contract formation. *See* Def.'s Mot. at 1 ("Because ECI's complaint lacks factual allegations that each differing site condition existed at the time of contract execution, . . . the Court should dismiss those portions of ECI's complaint for failure to state claims upon which the Court can grant relief."). Thus, the court must determine whether defendant has correctly identified a heightened pleading standard, or whether the requirement identified by defendant should be applied, as needed, to evidence provided by the parties at some later point in the litigation of differing site conditions claims.

Defendant relies on three precedential decisions binding on this court for the proposition that "there is a temporal aspect to a differing site condition claim." Def.'s Mot. at 6 (punctuation altered). These cases are: *Olympus Corp. v. United States*, 98 F.3d 1314, 1316-18 (Fed. Cir. 1996); *Turnkey Enters., Inc. v. United States*, 597 F.2d 750, 759 (Ct. Cl. 1979); and *John McShain, Inc. v. United States*, 375 F.2d 829, 833 (Ct. Cl. 1967). *See* Def.'s Mot. at 6-7; Def.'s Reply at 1, 3-4. The Federal Circuit's discussion of differing site conditions in *Olympus* makes it clear that there is a temporal limitation on differing site conditions claims:

> Our precedent has long imposed a temporal limitation on the applicability of the Differing Site Conditions clause . . . . Th[is] clause[] ha[s] only been applied to conditions existing when a contract was executed, not to those that developed during performance.

98 F.3d at 1317.

The Federal Circuit noted that the differing site conditions alleged by the contractor in *Olympus* were oil contamination of the contractor's work-site and a labor strike, and that both of these events occurred after the contract was awarded to the contractor (and after a notice to proceed had issued). *Id.* at 1315, 1318. In these circumstances, the Federal Circuit concluded that the government could not be held liable for differing site conditions which were not in existence at the time the contract was awarded.[4] *Id.* at 1318.

*Turnkey* and *John McShain* are similar cases. In *Turnkey*, there was adequate river water for the contractor's purposes at the time of contract formation, and inadequate river water at a later point during contract performance. 597 F.2d at 758-59 & n.18. In the circumstances of that case, after discrediting the contractor's evidence as to the timing of the reduced river water phenomenon, the Court of Claims held that the inadequate river water was not a differing site condition because the condition occurred after contract execution. *Id.* at 754 n.11, 758 n.18, 759. In *John McShain*, the contractor asserted that a cave-in at its excavation, which was caused by a broken water main that was the fault of neither

---

[4]/ The Federal Circuit also held that labor strikes are not differing site conditions and that strikes cannot support a claim founded solely on a differing site conditions contract clause. *Olympus*, 98 F.3d at 1318.

12

the contractor nor the United States, was a differing site condition. 375 F.2d at 831-33. The Court of Claims noted that break in the water main, and the cave-in, were conditions that occurred near the end of contract performance, not at the time of contract formation. *Id.* at 833. For this reason, the cave-in was not a differing site condition. *Id.*

The court is not convinced that the temporal limitation on differing site conditions claims identified by defendant, as evidenced by the holdings in these three cases, constitutes an element of proof of such general applicability that the precedential four-part test for Type I differing site conditions claims, and the precedential three-part test for Type II differing site conditions claims, must, in effect, be expanded. While the court agrees that a temporal limitation to differing site conditions is applicable in appropriate circumstances, *see Olympus*, 98 F.3d at 1317, this temporal limitation may have variations or exceptions which preclude its application or requirement as a heightened pleading standard. For example, in *Olympus* the Federal Circuit noted that the Court of Claims, in one instance, considered the temporal limitation to cover conditions in existence at the time of the issuance of a notice to proceed, rather than those in existence at the time of contract execution. *See id.* (citing *Hoffman v. United States*, 340 F.2d 645, 648-51 (Ct. Cl. 1964)). Furthermore, in *Turnkey* the Court of Claims noted that in a previous case, the court had approved a finding of a "changed condition," similar to a differing site condition, which was in existence not at the time of contract formation but at the time the contractor discovered that he was denied access to valuable water in a pond near the contractor's work-site. *See* 597 F.2d at 759 (citing *Briscoe v. United States*, 442 F.2d 953 (Ct. Cl. 1971); *Hoffman*, 340 F.2d at 651). Thus, although defendant has correctly identified a temporal limitation as generally applicable to differing site conditions claims, this limitation, unlike the precedential tests to establish Type I and Type II differing site conditions claims, is not a bedrock hurdle at the notice pleading level.

In any case, the court notes that Counts I-IV of the complaint all refer to allegedly latent conditions that, when accorded favorable inferences, were likely in existence at the time ECI was awarded the contract. *See* Pl.'s Opp. at 2 (arguing that "the Court could reasonably infer from the pleadings that the differing site conditions did in fact exist prior to the entry of the Contract"). Even Count V, which appears to focus on unexpectedly high water levels occurring from "late summer [through] early winter of 2009," Compl. ¶ 158, references higher than expected water levels in May and June 2009, *id.* ¶¶ 152, 157, which is around the

13

time the contract was executed and the notice to proceed was issued, *id.* ¶¶ 12, 16. According all favorable inferences to the allegations in Count V, the temporal limitation discussed in *Olympus*, *Turnkey* and *John McShain*, as tempered by *Briscoe* and *Hoffman*, does not foreclose recovery by plaintiff for the differing site conditions claim stated in Count V of the complaint.[5] Thus, even when the temporal limitation of differing site conditions claims is considered by the court, Counts I-V survive a challenge under RCFC 12(b)(6) because these claims are plausible differing site conditions claims.

Plaintiff argues, and the court must agree, that the temporal limitation on differing site conditions claims has more relevance once the factual record of a case has been developed. None of the cases relied upon by defendant for the temporal limitation "element" was decided upon a motion to dismiss. In this regard, plaintiff states that "[n]one of the cases cited by the Government establish a requirement that a plaintiff must specifically allege in the *complaint* that differing site conditions existed at the time that the contract was executed." Pl.'s Opp. at 12. Defendant concedes that *Olympus*, *Turnkey* and *John McShain* "were not decided at the motion-to-dismiss phase" of litigation. Def.'s Reply at 3. In light of the four-part test for Type I differing site conditions claims, and the three-part test for Type II differing site conditions claims, and in light of defendant's failure to cite a single case where a motion to dismiss was granted for failure to allege that the differing site conditions mentioned in the complaint were in existence at the time of contract formation, the court holds that Counts I-V of the complaint are not defective, under *Twombly* and *Iqbal*, for failure to include the temporal allegations sought by defendant.

### B. "Act of God" Weather Conditions

Defendant seeks dismissal of Count V, and a portion of Count IX, because these claims rely on the impact of high water levels on the contract work and schedule. Defendant's argument rests on two assumptions that cannot be verified by reference to the complaint. The first is that the government did not warrant or affirmatively represent the water levels that would be encountered by ECI at the dam. Def.'s Reply at 7 (stating that "the contract provides no support for [ECI's] interpretation that the Government 'warranted' the water level of Big Horn Lake or that it agreed to maintain a certain level for contract performance"). The second is

---

[5]/ The court does not address the merits of plaintiff's claims in this opinion.

that the high water levels at the dam were the result of an act of God. Def.'s Mot. at 8 (stating that "the alleged high water in Big Horn Lake, which is fed by the Big Horn River and its tributaries, is an act of God"). Neither of defendant's assumptions are necessarily true when favorable inferences are accorded the factual allegations in the complaint.

Government estimates in a solicitation, at times, provide information that influences the contractor's bid and, under certain circumstances, these estimates may give rise to a Type I differing site conditions claim. *E.g.*, *Travelers Cas. & Sur. Co. of Am. v. United States*, 75 Fed. Cl. 696, 719 (2007). Here, plaintiffs assert that the contract "affirmatively represented the conditions with regard to the . . . water elevations" at the dam. Compl. ¶ 151. This assertion rests upon two factual allegations: statements in the solicitation regarding average water elevations at the dam, and statements by the Bureau at a pre-bid site visit as to the water levels that ECI would encounter during contract performance. *Id.* ¶¶ 152, 155. According all favorable inferences to plaintiff's allegations of fact, the court cannot decide, at this juncture, whether ECI reasonably interpreted the contract "as making a representation as to the [water levels to be encountered at the dam]."[6] *International Technology*, 523 F.3d at 1348. The court therefore cannot accept defendant's assumption, for the purposes of its "act of God" challenge to Count V and a portion of Count IX, that no representation that could support a Type I differing site conditions claim was made by the government as to the water levels at the dam. The court now turns to defendant's second assumption, *i.e.*, the "act of God" nature of the high water levels encountered by ECI.

The term "act of God" is typically applied, in the government contract context, to occurrences of unusually severe weather conditions, such as abnormal heat, drought, high winds, excessive rains, or flooding. *See, e.g.*, *Fru-Con Constr. Corp. v. United States*, 43 Fed. Cl. 306, 328 (1999) (examining whether contract performance in that case was affected by an act of God in the form of "[u]nusually severe heat conditions"); *L & A Jackson Enters. v. United States*, 38 Fed. Cl. 22, 43 (1997) (discussing whether "an Act of God in the form of unusually rainy weather" had occurred so as to interrupt contract performance in that case). As to defendant's contention that the high water levels at the dam were the result of an

---

[6]/ It is appropriate to note that the only claim approved by the contracting officer was the one related to "ECI's claim for the differing site conditions encountered with respect to the [high] water elevations." Compl. ¶ 99.

15

"act of God," this assumption, too, cannot be confirmed merely by reference to the complaint. The complaint repeatedly mentions the high water levels encountered in 2009 and 2010 at the dam, but not once suggests that these levels were the result of unusual weather.[7] *See* Compl. ¶¶ 7-8, 60-61, 79, 99, 150, 155-64, 191-92.

Although plaintiff concedes that some portion of its high water level claims in Counts V and IX is weather-related, ECI quite clearly argues that "[t]here is no factual basis for this Court to conclude that the weather related delays in this matter were caused by 'acts of God.'" Pl.'s Opp. at 12. In addition, plaintiff argues that because water levels at a dam are subject to government control, these water levels cannot be attributed, necessarily, to an act of God.[8] *Id.* at 13. Furthermore, plaintiff notes that some of the weather-related high water levels encountered at the dam were seasonal in nature, and ECI's problems with high water levels could be attributed not to an act of God but to multiple government-caused delays in contract performance which pushed the schedule into an unfavorable time of the year. *Id.* at 13-14.

The court agrees with plaintiff that issues of fact cloud the high water level differing site conditions and delay claims. According favorable inferences to the factual allegations supporting Count V and Count IX of the complaint, the high water level claims are not necessarily barred by precedent regarding acts of God and unusual weather conditions. For these reasons, defendant's RCFC 12(b)(6) challenge to the high water claims in Counts V and IX, reviewed under the post-*Twombly* standard discussed *supra*, has not shown that these claims are merely speculative or are otherwise facially implausible. Defendant's RCFC 12(b)(6) challenge to the high water claims in Counts V and IX is denied.

---

[7]/ The court need not address defendant's many citations to "act of God" cases. Here, the factual predicate for defendant's legal argument, that unusual weather caused the high water levels at the dam, is not among the factual allegations in the complaint. Because it is not certain that unusual weather, or an act of God, underlies plaintiff's high water level claims, the cases cited by defendant discussing unusual weather conditions are inapposite.

[8]/ Defendant's motion argues, in a final footnote, that plaintiff has not attributed the high water levels at the dam to any act or fault of the government. Def.'s Mot. at 9 n.5. Plaintiff responded that "there is an intrinsic question of fact with respect to the Government's ability to utilize the dam to control water elevations." Pl.'s Opp. at 16. The court, according all favorable inferences to the factual allegations in the complaint, cannot assume that the government had no liability for the high water levels encountered by ECI at the dam.

## CONCLUSION

Defendant's motion to dismiss Counts I-V, and a portion of Count IX of the complaint, is denied, for the reasons stated in this opinion.

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss Counts I, II, III, IV, V and Portions of Count IX of Plaintiff's Complaint, filed October 12, 2012, is **DENIED**; and

(2) Defendant shall **FILE** an **Answer**, or otherwise respond to the complaint, on or before **March 22, 2013**.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge
